# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Lindy T., | Civ. No. 18-268 (BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | |
| Defendant. | |

Edward C. Olson, Esq., Disability Attorneys of Minnesota, and Karl E. Osterhout, Esq., Osterhout Disability Law, LLC, counsel for Plaintiff.

Elvi D. Jenkins, Esq., United States Attorney's Office, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 17, 21.) For the reasons stated below, the Court concludes that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence in the record. Therefore, Plaintiff's motion is denied and Defendant's motion is granted.

**I.     Background**

Plaintiff alleged a disability onset date of July 31, 2014. (Tr. 27, 74.)[1] In a decision dated February 1, 2017, the ALJ conducted the five-step sequential analysis[2] and found that Plaintiff was not disabled. (Tr. 27–43.) At step 2 of the sequential analysis, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine; bilateral carpal tunnel syndrome; and cubital tunnel syndrome on the left. (Tr. 29.) However, between steps 3 and 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except with the following limitations: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; occasional overhead reaching; frequent reaching in all other directions; and no power gripping or torqueing type activities using the hands or wrists. (Tr. 33.) At steps four and five, the ALJ found that Plaintiff could perform past relevant work as a server or, in the

---

[1]     Throughout this Opinion and Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 14.)

[2]     *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." (quotations omitted)).

alternative, other work that existed in significant numbers in the national economy. (Tr. 41–42.)[3]

## II. Standard of Review

The ALJ's decision will be upheld if the decision is supported substantial evidence in the record a whole. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (citation omitted). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." *Robinson v. Sullivan*, 956 F.3d 836, 838 (8th Cir. 1992). All evidence in the record is considered, whether it supports or detracts from the ALJ's decision. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006) (citation omitted). In doing so, the Court does not "reweigh the evidence presented to the ALJ, and [the Court] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (internal citation and quotation marks omitted). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the ALJ's decision must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

---

[3] The vocational expert testified at Plaintiff's hearing based on the *Dictionary of Occupational Titles* (4th ed. 1991) that Plaintiff's RFC and acquired skills as a server would transfer to at least three other jobs existing in significant numbers in the national economy. (Tr. 65–66.)

**III. Analysis**

Plaintiff asserts that the ALJ improperly weighed the opinion of Plaintiff's longtime treating physician, Dr. Petry, contrary to agency policy and Eighth Circuit precedent. (Doc. No. 18, Pl.'s Mem. 4–30.) Specifically, Plaintiff argues that the ALJ failed to address the factors set forth in 20 C.F.R. § 404.1527(c)[4] before determining the weight given. (Pl.'s Mem. 14.)

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citation omitted). Although a treating physician's opinion is usually entitled to great weight, it "do[es] not automatically control, since the record must be evaluated as a whole." *Bentley v. Shalala*, 52 F.3d 784, 785–86 (8th Cir. 1995) (citation omitted).

The regulations require that the ALJ must "always give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). "Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical

---

[4] The regulations set forth the following factors to consider for assigning weight to medical opinions, including those of treating sources: examining relationship, giving more weight to the opinion of an examining source than a non-examining source; treatment relationship, including length of the relationship, frequency of examination, and the nature and extent of the relationship; supportability; consistency; specialization; and any other factors that may be relevant in considering the weight to give a medical opinion. 20 C.F.R. § 404.1527(c)(1)–(6).

4

assessments are supported by better or more thorough evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations and quotation marks omitted). An ALJ may "justifiably discount the opinion of a treating physician where it is inconsistent or contrary to the medical evidence as a whole." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (internal citation and quotation marks omitted). Moreover, a treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement. *See Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) (citation omitted).

Plaintiff points to the Medical Source Statement ("MSS") filled out by Dr. Petry, asserting it is generally at odds with the RFC assessment provided by the ALJ. (Pl.'s Mem. 6; Tr. 33, 381–86.) There, Dr. Petry set forth his opinion that Plaintiff could not function in a competitive work setting, even on a part-time[5] basis. (Tr. 382–83.)[6] The

---

[5] The RFC assessment is based on an individual's ability to do sustained work-related physical and mental activities in a work setting eight hours a day, for five days a week, or the equivalent. SSR 96-8p, 1996 WL 374184 (July 2, 1996). Accordingly, the ability to perform work on a "part-time" basis does not factor into the RFC assessment.

[6] In his Medical Source Statement ("MSS"), Dr. Petry noted, among other things, the following opinions on Plaintiff's physical limitations: Plaintiff's pain would interfere with her attention and concentration up to 50% of the day; Plaintiff could only tolerate low stress jobs; Plaintiff could not ambulate effectively unassisted to perform daily activities; it would be medically reasonable that Plaintiff may need to lie down or recline periodically throughout the day to relieve or reduce the symptoms of Plaintiff's impairments; Plaintiff's symptoms would likely cause her to miss four or more days of work per month; Plaintiff could not perform lifting, pushing/pulling, bending, climbing, carrying, repetitive arm movements, crouching, or sitting/standing/walking for extended periods of time; Plaintiff could not walk a city block without pain; and Plaintiff would be limited to two hours of standing/walking and four hours of sitting in a single day. (Tr. 381–86.)

5

ALJ gave "little weight" to Dr. Petry's opinion, reasoning that the opinion was not supported by Dr. Petry's own June 3, 2015 examination of Plaintiff or the overall course of treatment. (Tr. 40.) The ALJ also found other evidence in the record, such as Plaintiff's daily activities, Dr. Neil Johnson's[7] findings, and the findings of the physicians employed by the State Disability Determination Services ("SDDS"), did not support Dr. Petry's opinion. (Tr. 35–36, 39–40, 53–60, 73–84, 86–97, 352–62.)

In particular, the ALJ explained that Dr. Petry's opinion lacked citation or reference to any objective findings or data to support or corroborate his opinion. (Tr. 40.)[8] Further, the ALJ found that Dr. Petry's opinion did not provide any rationale as to why Plaintiff would miss work at the frequency he indicated. (Tr. 40.) Instead, the opinion appeared to be based "primary [sic] on [Plaintiff]'s self-report of symptoms and limitations . . .", such as Plaintiff's self-report of not being able to walk 200 feet. (Tr. 40–41.) Treating opinions based on subjective complaints rather than objective medical evidence may be given less weight by the ALJ. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014).

---

[7] Dr. Neil Johnson, MD, Internal Medicine specialist, performed a consultative examination of Plaintiff at the request of the Disability Determination Service for Social Security claims. (Tr. 35, 353.)

[8] Plaintiff argues that the ALJ's opinion did not adequately consider the length or "treating" nature of Plaintiff's relationship with Dr. Petry. (Pl.'s Mem. 14–16.) However, the record shows that the ALJ undertook a lengthy process of documenting each of Plaintiff's medical examinations over the period in question while also recognizing Dr. Petry as Plaintiff's "treating family practitioner for back and neck pain." (Tr. 34–39.)

The ALJ noted that the objective tests performed at Plaintiff's June 3, 2015 visit yielded the following results: normal neurological exam, normal motor strength in the upper and lower extremities, intact sensory exam, and 2+ symmetrical deep reflexes. (Tr. 40, 415.) Thereafter, in 2016, Plaintiff's neurological examination remained non-focal, with normal gait, motor, strength, tone, and sensation in all four extremities. (Tr. 41, 388, 391, 456.) The ALJ found that the objective test results were not consistent with Dr. Petry's opinion. (Tr. 40–41.) An ALJ "may give less weight to a conclusory or inconsistent opinion by a treating physician." *Bernard v. Colvin*, 774 F.3d 482, 487 (8th Cir. 2014).

The ALJ also noted that Dr. Petry undertook a conservative course of treatment during the relevant time period with a lack of aggressive medical care or therapy. (Tr. 40–41.) Despite claims of disabling pain, the ALJ noted that no significant change had been made to Plaintiff's medication regimen, and only one injection with no surgeries had been provided to address the pain. (Tr. 40.) A conservative course of treatment contradicts claims of disabling pain. *See Robinson v. Sullivan*, 956 F.3d 836, 840 (8th Cir. 1992). Additionally, though Plaintiff was advised to complete physical therapy and found it to be somewhat helpful, the ALJ noted that Plaintiff completed only one session. (Tr. 35–36, 310, 414.)[9] Noncompliance with an advised treatment regimen

---

[9]  In the ALJ's decision, the ALJ stated there was "no indication the claimant had pursued low cost or no cost care, was denied treatment due to no money, no insurance or unpaid medical bill, or that she had presented to ER for care and/or service." (Tr. 39.) Plaintiff argues that the ALJ's statement was entirely speculative given that, at the hearing, the ALJ did not inquire into what medical options Plaintiff explored.

(Footnote Continued on Next Page)

7

can constitute evidence that is inconsistent with a treating physician's medical opinion. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

Other evidence in the record further supports the ALJ's decision to give Dr. Petry's opinion "little weight." The ALJ noted Plaintiff's daily activities—including making simple meals, doing laundry, doing dishes, mowing the grass, driving to her mother's residence every morning, grocery shopping, and maintaining her personal hygiene—were consistent with the limitations in the RFC assessed. (Tr. 41, 53–60.) Evidence of daily activities that are inconsistent with allegations of disabling pain may be considered in judging the credibility of such complaints. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038–39 (8th Cir. 2001).

The ALJ also considered Dr. Johnson's consultative examination performed on January 29, 2015. (Tr. 35–36, 352–62.) Dr. Johnson noted that Plaintiff's extremities showed no clubbing, cyanosis, peripheral edema, or varicose veins, and peripheral pulses were intact. (Tr. 35–36, 354.) She exhibited no tenderness in her back, no paravertebral muscle spasm, no pain with straight leg raising. (Tr. 36, 354.) Although she walked slightly slow and had mild difficulty tandem walking, she did not use an assistive device.

---

(Footnote Continued from Previous Page)
(Pl.'s Mem. 24–25.) The Court agrees that the ALJ did not adequately explore the reasons why Plaintiff did not seek further medical treatment. *See* SSR 96-7p, 1996 WL 374186 at *7– 8 (July 2, 1996) ("[t]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.") However, even absent the ALJ's problematic statement, the ALJ's conclusion is nevertheless supported by substantial evidence.

(Tr. 35, 354.) Her range of motion, though reduced in the cervical spine and somewhat reduced in the right shoulder, was within normal limits. (Tr. 36, 354.) Though her pinching and grip strength results were on the low side, her joint range of motion was normal. (Tr. 36, 355–56, 358.) Plaintiff's neurological testing and reflexes were normal. (Tr. 36, 357.) Imaging showed retrolisthesis between C4 and C6, diffuse spondylosis ranging from minimal to advanced, and mid cervical facetal arthrosis. (Tr. 36, 360.) Otherwise, vertebral height was satisfactory and prevertebral tissues were intact. (Tr. 36, 360.) Dr. Johnson's impression was chronic neck pain, which the ALJ found to be "consistent with and supportive of the light residual functional capacity assessed." (Tr. 36, 357.) Although Dr. Johnson also stated that Plaintiff could not lift more than five pounds, the ALJ found the conclusion to be "a repeat of [Plaintiff]'s self-report rather than an objective test result." (Tr. 36, 357.) [10] "The interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted). The ALJ gave "substantial weight" to Dr. Johnson's findings and assessment, absent Dr. Johnson's statement that Plaintiff could not lift more than five pounds, to which the ALJ placed "no weight." (Tr. 36.)

Dr. Johnson's impression was corroborated by the opinions of the two SDDS physicians who determined that Plaintiff was "not disabled" and could perform a range of

---

[10]  Specifically, the ALJ found that neither Dr. Johnson's objective findings nor Plaintiff's daily activities supported the five-pound limitation. (Tr. 36.)

9

light work with postural and manipulative limitations. (Tr. 36, 40, 81–84, 93–97, 357.)[11]
The ALJ gave the SDDS physicians' opinions "great weight" and incorporated their limitations into the RFC, noting that the SDDS physicians reviewed the evidence using expertise and specialized knowledge in assessing impairments and limitations within the disability standards used by the Social Security Administration. (Tr. 40.)[12]

Upon review of the record, the Court concludes that the ALJ gave good reasons for giving "little weight" to Dr. Petry's opinion and that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff was not disabled.

## ORDER

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 17) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. No. 21) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

[11] Plaintiff argues that the record as reviewed by the SDDS physicians was incomplete, given that the SDDS physicians did not have access to nine additional exhibits. (Pl.'s Mem. 26.) However, the ALJ is not required to solicit an updated medical opinion from the SDDS physicians unless additional medical evidence is subsequently received that may change the SDDS physicians' findings. *See* SSR 96-6p, 1996 WL 374180 (July 2, 1996). The ALJ discounted such a possibility, finding that Plaintiff's condition did not significantly change between 2015 and 2016. (Tr. 41.)

[12] Plaintiff argues that the ALJ improperly relied on the SDDS physicians' assessments because the opinions of non-examining state agency consultants do not constitute substantial evidence on their own. (Pl.'s Mem. 27.) However, the record shows that the ALJ considered other sources of evidence (e.g., Plaintiff's daily activities) in addition to the SDDS physicians' opinions. (Tr. 34–41.)

Date: March 11, 2019.                    *s/ Becky R. Thorson*_____
                                         BECKY R. THORSON
                                         United States Magistrate Judge